All right, counsel, let's see, is it Mr. Gross? Yes, your honor. Okay, very well, you may proceed when you're ready. Thank you, your honor. May it please the court, my name is Joseph Palazzolo, who are the appellants in this case. This is a case about insurance coverage and it raises basically two sets of issues. One has to do with the interpretation of the insurance policy, in particular the owned motorcycle exclusion in Palazzolo's insurance policy from Safeco Insurance Company. The other issues are two issues that have to do with the application of summary judgment principles to the evidence in the summary judgment record in this case. The circumstances of the case are that the Palazzolo's, Mr. and Mrs. Palazzolo had a grown daughter, Lauren, who had an infant child, a son. Their daughter, Lauren, was killed riding on a motorcycle that she owned. It was being driven by someone else. The Palazzolo's had purchased the insurance policy in question here from Safeco and the policy provided coverage for, the appellant's position is the policy covered Lauren as a resident of their household and so that she would be covered when she was killed riding on as a passenger on her motorcycle. Counsel, Judge Kobus here, did the district court address her residency below or was it largely based on the motorcycle exclusion? District Court did not address the two summary judgment issues. Now whether she was a resident of the household or whether she owned, I'm sorry, whether she was an owner of an automobile. So you know for my purposes and I defer to my colleagues on the panel if they feel otherwise, but I would like you to address what an own motorcycle means. To me that, especially if you look at the district court's ruling, that's the key issue here. What do we, what should we make of that? I understood that question, your honor, and I will address it. I want to let the court know that there's a little bit of cutting out happening on my end during that question, but I believe I understood the question. I think that we should address what exclusion means because it could mean more than one thing. And because of that, and I'll be happy to address why I will address why it could mean more than one thing. But because it can, because it is susceptible to more than one construction, under Missouri law the exclusion should have been read to provide the insurance. It should have been read, construed strictly against the insurer which drafted the policy. It's an exclusion, the insurer under Missouri law. The reason it is susceptible to more than one construction, at least two, is it certainly could mean what Safeco says it means. Not well drafted for that meaning, but it could mean that if Lauren was riding on a motorcycle that she owned, that she has no coverage. That, at the very least, that doesn't make more sense than a construction which is also reasonable given the language of the policy. That the exclusion referred to a motorcycle owned by the named insureds, by the people who bought the policy to whom it was issued. If they had the motorcycle that wasn't listed in the coverage and was insured, particularly if it's insured elsewhere, it would be perfectly reasonable for Safeco to not cover claims based on the use of a vehicle that the insureds owned. So if we agree with you counsel, Judge Kovacs again, I'm sorry and I hope there's no lag here, but if we agree with you, do we have to remand for the, what you call the two summary judgment issues, that's the residency and the ownership of a vehicle. I don't think remand is necessary for that because this court can review the record. The summary judgment determination on those issues will be made on the basis of the summary judgment record. Well, aren't there factual disputes about that? About where she lived, when, about the title, who was on the title and why? Aren't there some credibility determinations that should go to a jury or the district court judge if it's a fact finder? Yes, your honor. I did not mean that the case shouldn't be remanded. I meant that the question of summary judgment, I think, can be resolved by this court on the basis of the summary judgment record. And by denying the motion for summary judgment should have been denied because A, the owned motorcycle exclusion is susceptible to more than one construction, and B, the question of whether Lauren was a resident of her parents' household. There's a fact question that should be decided by a jury. It was controverted in the evidence, in the summary judgment record. And the question of whether she owned a vehicle also was controverted. There certainly was enough evidence for a jury to find in Safeco's favor on both of those questions. And so I would argue that the case certainly should be remanded, but remanded for trial. I think summary judgment can be resolved conclusively by this court. The review of summary judgment is de novo in this court, and the summary judgment record is complete. This court can review it every bit as well as the district court judge. So to go back then to the exclusionary clause, maybe I should address why I say that these factual matters were controverted. Lauren and her son lived in more than one place. She had a home that she owned, but she also routinely spent time on a regular, continuous basis in her parents' home with her son. She wasn't just visiting. She had a bedroom. Her son had a bedroom. They both kept their clothing there. Mrs. Palazzolo, her mother, testified that their residence was continuous and permanent, that there were members of the household. The particular evidence that there were members of the household included wasn't limited to this, but it included that they spent two or three nights a week there on a continuous basis. They kept their clothing there. Lauren participated. She purchased groceries. She joined in preparing meals. She went on family vacations. She drove the automobiles that were garaged at that home, and as her mother testified, she was a continuous and permanent resident. There was no end in sight. In the Apolli's brief, Apolli cites a case which is not analogous. Most of all, it's not analogous because that case was decided after trial. That case was submitted to the district court. The district court didn't even rule on this issue, did it? No, Your Honor, but I'm suggesting that this court could affirm the grant of summary judgment, I believe, on any basis that the district court might have been correct in granting summary judgment. Don't you think the district court is particularly well-suited to handle these sort of evidentiary issues, and it didn't happen here? And you're asking us to do that, as I understand it, assuming we move past the motorcycle exception. Why wouldn't we just send it back? Well, my preference would be, and I think it's... I understand your preference, but my question is, why wouldn't we just send it back and let the district court, if we assume that your motorcycle exception argument is correct, I mean, we are not well-positioned to address the evidence. Well, this evidence is summary judgment evidence. If there was evidence... I certainly wouldn't suggest that this court should do any weighing of the evidence or make any credibility determinations any more than the district court should. But you agree that the issues are contested, correct? Yes, Your Honor, and I think they need to be resolved by a jury. I think the summary judgment record demonstrates that there are... So you just want us to send it back for a jury trial, is that right? Yes, Your Honor. I think that this... I mean, alternatively, certainly, send it back for the district court to rule on these controverted... to determine whether there's a controversy as to these two evidentiary issues. But I think... I'm suggesting that I think this court can make that determination on the summary judgment record the same as the district court can. This court doesn't have a witness stand and certainly is not going to be in a position to lay evidence or make credibility determinations. I mean, do you think it's a close call? I mean, she had a separate address. She had represented the state, as I recall, that she had a separate address. Is that correct? I mean, she was on the title. The parents, as I recall, had differing stories about why she was on the title for the vehicle. That strikes me as a fairly close call. Your Honor, I would definitely rather be the appellate guy than the trial guy on the plaintiff's side of this case because I think that the granting of summary judgment, which is my issue at this point, is pretty clearly mistaken. And so the direct answer to your question is it may very well be a close call at best for the plaintiffs. But the particular issue before the reviewing court is were those two facts controverted? And I think that they were very well controverted. But isn't the key issue really the motorcycle exception? Because the district court didn't rule on the other two issues. I wouldn't call the proposition that the key issue here is the motorcycle exclusion because if the exclusion applied, if the exclusion is unambiguous. Then you lose, right? As I understand it. And I'm not saying you lose here, but it seems to me that's the fundamental issue here, at least in my mind. All three of the issues could kill the plaintiff's case. And the motorcycle exclusion, I certainly don't want to be less than clear about this. My position is the motorcycle exclusion is ambiguous because it's susceptible to either one of two constructions, at least two constructions. But I also think, and I don't want to, I am belaboring the issue. I don't want to beat a dead horse. I think that this court can judge the summary judgment record as well as a district court. But certainly, if the exclusion is ambiguous, the worst that should happen from the appellant's point of view is a remand to the district court to resolve those remaining summary judgment evidentiary issues. I see that I'm well into the time that I'd like to save for rebuttal. So if the court has no further questions, I'd like to stop at this point. Thank you. All right. Thank you, counsel. Mr. Newhart. Thank you, Judge, and good afternoon. So I'd like to start off by, I guess, answering that initial question that was asked is, what does this exclusion mean? And I think it means exactly what the district court believed that it meant. And so we have an exclusion in a auto policy. And the only court that has interpreted it in a reported decision is the district court. There are no cases out there. There's no long history and line of cases indicating that this exclusion is ambiguous. And we have to view what it means in the context of what the policy said and in the context of the tools of interpretation that are laid out. At least the tools are laid out pretty clearly in the Missouri cases. And these owned vehicle exclusions are prevalent, and there's many cases that deal with them. And they come up in different contexts. But, of course, the purpose is an insurance company is limiting exposure to accidents involving vehicles that are not insured under the policy that might be frequently used by the insured. In this case, you also have a motorcycle, and motorcycles are often insured under separate motorcycle policies. So you have a specific exclusion dealing with that in order to address the situations where you have an insured who has a motorcycle and a separate policy, just like we had in this circumstance. So the tools that we look at is if a language could always be better. In hindsight, when you have a particular set of circumstances, you could always say, you know what, it would have been better if this would have been said. I mean, the language and other parts of the policy was better. Was it not? I mean, I'm looking at UIM exclusion A1, any motor vehicle insured by that insured, or excuse me, owned by that insured. Exclusion A2, any motor vehicle that you own. In other words, your client knew how to draft this properly. And I think the argument is, as you admit, it could have been drafted better. I think that's fairly obvious. But when you have evidence that the company knew how to draft it specifically and didn't, why isn't that ambiguous? So ambiguity, again, is not, it could be better, it could be different, it could be clearer. Unclear language or difficult language is not, many cases say it, it's not ambiguous. And in certain circumstances, like the Havner case that's cited by the plaintiffs, I'm sorry, defendants in this case, even if you have an ambiguity in the Havner case, the court said the resident is ambiguous. Household's ambiguous, but then went on to find that the insured still didn't satisfy the policy requirements and there was no coverage. So even if you have an ambiguity, it would be construed against the insurer, but the insured must identify a reasonable alternative interpretation that would grant coverage. If they cannot do that, then the policy's not ambiguous. And if they cannot do that, you certainly can't rule in favor of the insureds on this particular issue. And here, the fact that they used different language, uninsured, or used you to refer back to the named insureds, that's just all part of the analysis to show that if they had intended to refer to the named insureds, they had done that in other places, they would have done that here. And the problem that the defendants have... Well, they would have drafted it better because they intended to do this. And I may be a little imprecise here, but isn't that the argument? I mean, we interpret these contracts when they're ambiguous against the carrier. And I heard you suggest that, well, because there are other provisions that are accurate. Clearly, the carrier knew what they wanted to do here, even though it's not in the text of the particular provision we're analyzing. I don't think I'm being fair to your argument, but if you'll clear it up for me. Absolutely. And obviously, I'm not conveying what I'm intending to convey because I don't think the language is unclear. I think you have, when you read the exclusion in total, it refers to bodily injuries sustained by an insured. And then you go down to the specific exclusion that says while occupying or operating an owned motorcycle or moped. So this particular exclusion does refer to an insured, and it refers to bodily injury to that insured. Now, what I think the court is saying is, well, then why don't you say it twice? Why don't you say while occupying or operating a motorcycle owned by an insured? But they say it once. And again, the difficulty... Just to be clear, who are the insureds under the policy? Well, that depends upon the coverage, and that depends upon the particular exclusions. Well, is there a difference between a named insured and an insured under the policy? Absolutely. They're treated differently throughout. So you just suggested that a named insured, but does it matter that this just says insured? In other words, do we have to hit the two issues that your co-counsel addressed on the residency and the ownership of the automobile? So if you read this exclusion to include all insureds, the parents and Lauren, then... But it says an insured, right? It doesn't say a named insured. So would you concede that that's what it means? If the court wants to... No, no, no. My question is, do you think, is it your position that insured covers... In other words, we have to address those secondary issues to determine whether or not she's an insured? And the answer is no. And that's what the district court did, is the district court assumed that she was an insured. And I think this court can do that as well, and assume that she's an insured, and if she is an insured, then she's going to be excluded by the exclusion that we've identified for the court. So if she's not an insured, then the exclusion doesn't apply, but of course she has no coverage because she's not an insured. So I don't think the district court did anything wrong by focusing on the exclusion, which I don't know... Obviously, I don't know what the intent of the court was and why it focused on that, because I do believe it could have granted summary judgment on the other grounds as well. But when you read the exclusion in full, it refers to bodily injuries sustained by an insured. The only person who sustained bodily injury was Lauren Palazzolo. However, if you want to read this exclusion to mean any insured, well, Lauren Palazzolo, assuming she's an insured, which she has to be or there's no coverage, she did own it, so therefore she'd be excluded. So again, the problem that plaintiffs interpret... I'm sorry, I keep saying plaintiffs, they're defendants in this case. The problem with appellants' interpretation in this case is they can't identify a reasonable alternative interpretation that would grant her coverage. So they want you to read this to specifically apply only to people that would not include her. So they want you to say, this applies to the named insureds only. But of course, that can't be the case, because immediately preceding that, they have an exclusion that applies to vehicles that are owned by you, and you was defined as the named insureds. So when we read those two provisions together, which you must, obviously when the insurer wanted to refer to the named insurers, it did so, and it does so throughout the policy. So it's not referring to the named insureds. And then appellants argue, well, it could just mean everybody. Well, everybody includes Lauren Palazzolo, so therefore she's excluded. They also reference it could mean somebody occupying or operating. Well, she was occupying, so that would exclude her as well. So again, their problem is they can't identify a reasonable interpretation that would not include Lauren. So if it's any insured, it includes her. If it's an insured, it includes her. And then anything besides the named insureds or just picking some random person off the street, you end up with no coverage because she's excluded. So again, we come back to you can't just look at it and say it could have been better or it could be different. You have to look at it in the context of is there more than one reasonable interpretation, and does one of those reasonable interpretations prevent application of the exclusion to Lauren Palazzolo? And there is no such interpretation. They don't even set forth one for you other than saying this must be referring to the named insureds. But I think it's pretty clear from the policy as a whole that this does not refer to the named insureds. It refers to an insured. So again, I'm sorry. Is that a question? So we come back to what the base requirement to prove an ambiguity is you must identify a reasonable interpretation that would grant coverage, and they just can't do it here. And they've had multiple chances on summary judgment and, of course, a chance on appeal to say this is the interpretation. This is what we think it means, and this is why we think it means it. And the only one that they can come up with is it must be referring to the named insureds, but, of course, there'd be no reason to read it that way based upon the language of the entire policy. So I'll just address briefly. I know the court's focused on what the district court did. I think there's some, and we noted this in our briefing, but you can have, I don't think there are any facts in dispute. I don't think the fact that Lauren Palazzolo represented to the government on multiple occasions in order to receive benefits, that her household was limited to her and her son at the house that she owned. There are no cases in Missouri that have a fact pattern anywhere near the situation we have here where a court has said somebody in Lauren Palazzolo's position was deemed to be a resident of her parents' household. She owns her own house. She has her own child. She has her own established household. There's obviously cases that deal with multiple residency, but all of those are dealing with minors, usually with either divorced parents or children who are away at school or children who are staying with other relatives. And I raise this point because I think the court can. Even if there's a belief that this exclusion is not going to apply to Lauren, I think the court obviously can affirm on any basis. And we don't have disputes as to facts. We have disputes as to the characterization of those facts. Do they establish residency? Do they not establish residency? I don't think there's one fact that has been disputed. They don't dispute that she represented to the government that she was not part of their household. We don't dispute that she stayed some nights at her parents' house. We don't dispute that her parents gave her money. They don't dispute that she owned her own home. In fact, pre-litigation admissions indicate that they believe that that was her household. So ultimately, we have both on the ownership of the vehicle and as well as the residency or resident of the household, we have disputes as to what these facts mean. We don't have disputes as to the actual fact. Application of those facts to the policy is a question of law that this court or the trial court, if it chosen to do so, could certainly rule upon. So I don't think we have a live, and I don't believe they've identified in their briefing, one actual fact that is disputed. They've simply said, we're disputing that that constitutes residency or not constitutes residency. And that's not a question of fact, that's a question of law that the court can decide. So unless anybody has any further questions, I'll turn it back over to Mr. Gross. Well, counsel, who would be covered under this? If this person was somebody other than the decedent, who could be covered under the policy? And judge, can I ask for what circumstance? For this accident? Yeah, in an accident and had this decedent not been the person she was and the relationship she was, coverage would have been provided. If she had been, so you have a question of she's a rated driver, but she's not a named insurer. And she's a rated driver on the vehicle that she drove on a regular basis, for which she was also the title owner. So she would be an insured. Let's put it this way, suppose you had been a hitchhiker, a rider. And the hitchhiker was injured? Yes. Well, that would be the same thing as the motorcycle is not insured under this policy. So a passenger on the motorcycle is not. If it's a covered auto, then a passenger in a covered auto would be covered for uninsured motorist coverage. If Lauren Palazzolo was operating a covered auto, then she has all kinds of different coverages that are available. So the point here being that the insurer has the right to contract to eliminate exposure for vehicles that the insured operates on a regular basis that are not covered by the policy. And that's why all of these definitions of who's an insured and what's excluded, owned auto exclusions, owned motorcycle exclusions, they all work together to eliminate that slice of exposure of people insuring certain vehicles, but then driving other vehicles on a regular basis. Oftentimes when those vehicles aren't covered by anything. And that's the situation we have here. And that's why it all plays in. And of course, then we have the additional issue of whether she's a resident of her parents' household. Thank you. All right. Mr. Graves? Thank you, Your Honor. I want to say first that I would like for the court to be guided as to what my argument is by my argument rather than Mr. Muthardt's recapitulation of my argument.  In the appellant's brief and the reply brief, I think the argument is a little more linear. And I'd like the court to hold me accountable for my version of the argument. And I think it's a pretty straightforward argument. To deal with just the policy exclusion, the notion that we haven't suggested an alternative interpretation ignores both briefs, both the appellant's brief and the respondent's brief. The interpretation that makes sense, the most sense to me, is that you're telling the people who bought the policy. You're talking to the people who bought the policy and saying this is what your coverage is and what your coverage isn't. And so when you talk about an owned motorcycle, particularly because elsewhere in the policy, you have a similar circumstance for an exclusion. And the reference is to vehicles that you own. And here you're talking about owned vehicles. The logical rationale is that we're talking about motorcycles, vehicles owned by the named insured, the people you're talking to. And certainly it would be clearer if you said that. But if you wanted to apply to other people, then say that. At least two interpretations that are plausible here are that owned means owned by anybody or by any insured, which would include Lauren, or that owned means owned by the named insured. It doesn't make more sense, which is what Safeco's argument suggests. It certainly doesn't make more sense to exclude an accident on a motorcycle that Lauren owns than to exclude an accident on a motorcycle that her parents owned. Why don't we read subsection 5 in conjunction with B? And B refers to an insured. And then subsection 5 says owned. Why don't we make the leap there or the logical inference and say, look, it's owned by an insured. Well, I think it may not be a leap, but it's not the only logical inference. And I think the question before the court is can— But it specifically does not say named insured. And I think that's your alternative, right? Exactly, Your Honor. It could mean what Safeco—I'm not suggesting or wanting to argue that it couldn't mean what Safeco wants it to mean. I am suggesting that what they wrote was ambiguous. It would have been easy for them to write a policy. We've suggested language. We've cited a case that had clear language in the policy. It would have been easy for Safeco to say that the warrant coverage for injuries suffered by a person while riding on a motorcycle owned by any named insured or the spouse, child, or cohabitant of any named insured or any person otherwise entitled to coverage for bodily injury under the policy. Covers the case. I don't write policies for a living. They do. And they don't have to get it perfect. The court noted that. Mr. Moothart said that doesn't have to be perfect. But under Missouri law, it has to be unambiguous, which means you couldn't construe it in two ways. I don't think there's any question that you could construe this policy, that exclusion, as applying to the named insureds who the policy is talking to, who bought the policy, who needs to know. Lauren didn't need to know. Or it could be addressing some larger category than that. They could have made it clear. I'm out of time, so I appreciate the court's attention. All right. Thank you, counsel. Thank you for your arguments today. And the case is submitted. And we will render a decision in due course. Thank you, your honor. All right.